**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AEROGLOBAL CAPITAL MANAGEMENT, LLC, a Delaware Limited Liability Company, | : : : | |
| Plaintiff, | : : | C.A. No. 02-CV-5311 |
| v. | : : | JURY TRIAL DEMANDED |
| CIRRUS INDUSTRIES, INC., a Delaware corporation, CIRRUS HOLDING COMPANY LIMITED, a Cayman Islands corporation, CRESCENT CAPITAL INVESTMENTS, INC., a Delaware corporation, FIRST ISLAMIC INVESTMENT BANK, E.C., a Bahrain Investment Bank, ALAN L. KLAPMEIER, DALE E. KLAPMEIER, PETER P. McDERMOTT, II, JOHN N. DYSLIN, SIMA GRIFFITH, MARWAN ATALLA, WILLIAM J. MIDON and WILLIAM C. WOOD, JR., | : : : : : : : : : : : | |
| Defendants. | : : : | |

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO
VACATE ORDER DATED DECEMBER 10, 2002 AND TO
EXTEND THE TIME TO EFFECT SERVICE UPON CERTAIN DEFENDANTS**

## I. INTRODUCTION

As a result of Plaintiff AeroGlobal Capital Management, LLC's ("AeroGlobal") strategy of hiding for months the federal lawsuit it filed in this Court, AeroGlobal failed to serve defendant Sima Griffith during the 120-day period provided by Rule 4 of the Federal Rules of Civil Procedure. No good cause supports AeroGlobal's attempt to extend the period within which service may be obtained. Accordingly, Ms. Griffith opposes AeroGlobal's Motion to

878223v1

Vacate Order Dated December 10, 2002 and to Extend the Time to Effect Service Upon Certain Defendants.[1]

## II. FACTUAL AND PROCEDURAL BACKGROUND

In June 2001, defendant Cirrus Industries, Inc. ("Cirrus") and plaintiff AeroGlobal entered into a letter of intent for the sale of a minority interest in Cirrus stock to AeroGlobal. The letter of intent required AeroGlobal to immediately fund a $15 million bridge loan, and required AeroGlobal to close on the remaining $30 million investment within a specified period of time (which later was extended at AeroGlobal's request to August 10, 2001). AeroGlobal failed to immediately fund the $15 million bridge loan, and instead funded only $12 million. AeroGlobal's representatives then informed Cirrus that AeroGlobal could not close by August 10, 2001, and, instead, could close, at the earliest, in September or October. Cirrus terminated the letter of intent, and entered into an agreement with Crescent Capital Investments, Inc. ("Crescent") for the sale of a controlling interest in Cirrus to Crescent.

Prior to entering into a letter of intent with AeroGlobal, Cirrus had worked with Sima Griffith and her firm, Aethlon Capital, in locating potential investors in Cirrus. Ms. Griffith had introduced Cirrus to Crescent, and Cirrus had previously negotiated with Crescent for the purchase by Crescent of a controlling interest in Cirrus. After Cirrus terminated the AeroGlobal letter of intent, Cirrus and Crescent entered into a new agreement for the purchase of a controlling interest by Crescent in Cirrus, and Ms. Griffith and her firm were compensated for their role in facilitating this agreement.

---

[1] Defendants Cirrus Industries, Inc., Cirrus Holding Company Limited, Marwan Atalla, John N. Dyslin, Alan Klapmeier, Dale Klapmeier, Peter McDermott, William Midon, and William C. Wood, Jr. do not contest that AeroGlobal's purported service of the summons and complaint occurred within the 120-day period following the filing of the suit. Defendants reserve their right to challenge the adequacy of this purported service in an appropriate motion pursuant to Rule 12 of the Federal Rules of Civil Procedure.

This action was filed on July 24, 2002--almost a year after AeroGlobal brought a similar suit in Delaware. Despite the filing of the complaint in July, and the issuance of a summons immediately thereafter, AeroGlobal failed to serve any defendants for three-and-a-half months. Although in frequent contact with counsel for Cirrus, Crescent, Ms. Griffith, and the individual board members, AeroGlobal's counsel failed even to mention that a federal lawsuit existed. Only during the deposition of Craig Millard, which occurred on November 4, 2002, did AeroGlobal admit that it had filed this suit. Only then did AeroGlobal make any effort to serve the various defendants. *See* Pl.'s Br. at 3.

AeroGlobal concedes that it failed to serve Sima Griffith within the 120-day window provided by Rule 4. *See* Pl.'s Br. at 3. Without any evidentiary support, AeroGlobal makes an incorrect accusation that Ms. Griffith "attempted to evade service by refusing to accept the service package . . . ." *Id.* This is not true. *See* Affidavit of Sima Griffith (Dec. 31, 2002) at ¶ 6. Ms. Griffith did not refuse to accept the service package; she was not at her home during the one attempt AeroGlobal made during a four-month period to serve her, and she never saw any notice from the Post Office that a registered letter had been sent. *See* Griffith Aff. at ¶ 7. Ms. Griffith is an investment banker, and works at her office in downtown Minneapolis during weekdays. *See id.* AeroGlobal, which had deposed Ms. Griffith in May 2002, was fully aware of her professional activities, and should have known that she could not be found at home during the day. *See id.* Had AeroGlobal not waited until the last two weeks of the service period, AeroGlobal almost certainly could have obtained service. But AeroGlobal never made any effort to re-serve Ms. Griffith until after the period for service had expired, never attempted to personally serve her, never contacted her counsel to see if she would waive service, and, in short, never made any significant effort to effect service during the four-month period. Only after the

3

120-day period for service ended, did AeroGlobal attempt to send the complaint to Ms. Griffith's office, where it was received by her secretary. *Id.*

### III.   ARGUMENT

**A.   FEDERAL RULE OF CIVIL PROCEDURE 4(m) REQUIRES DILIGENT EFFORTS TO EFFECT SERVICE.**

Federal Rule of Civil Procedure 4(m) was created to "foster diligent prosecution of civil cases." *National Union Fire Ins. Co. v. Sun*, 1994 WL 463009, at *3 (S.D.N.Y. Aug. 25, 1994). Under Rule 4(m), a plaintiff must serve a summons and complaint within 120 days after the filing of the complaint. If a plaintiff fails to properly serve a complaint within this time, the Court "shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time." Fed. R. Civ. P. 4(m). However, "if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period." *Id.*

The Third Circuit has stressed that "half-hearted efforts by counsel to effect service of process prior to the deadline do not necessarily excuse a delay," even if dismissal would result in a time-bar. *Petrucelli v. Bohringer and Gatzinger, GMBH*, 46 F.3d 1298, 1307 (3d Cir. 1995) (quotations omitted). Instead, "the lesson to the federal plaintiff's lawyer is not to take any chances. Treat the 120 days with the respect reserved for a time bomb." *Id.* (quotations omitted); *see also National Union Fire Ins. Co.*, 1994 WL 463009, at *4 ("For though leniency may sometimes be appropriate for those who have in good faith attempted timely service, to afford it to litigants who have failed to make even the most basic efforts would turn Rule 4(m) into a toothless tiger.").

The Third Circuit's decision in *Petrucelli* demonstrates the high standard that a federal practitioner is expected to meet. There, plaintiff's counsel had tried to effect service on a corporation through the Oklahoma Secretary of State's office, and was assured by a state

4

878223v1

employee that service had been completed. It had not, and the district court dismissed the suit. The Third Circuit agreed that there was no good cause mandating an extension of time. 46 F.3d at 1306-07 (remanding for a determination whether, notwithstanding the lack of good cause, the district court wished to exercise its discretion to relieve plaintiff from effect of own negligence); *see also Momah v. Albert Einstein Med. Center*, 158 F.R.D. 66, 69-70 (E.D. Pa. 1994) (concluding that plaintiff's counsel's unsuccessful attempt to contact defense counsel on the last day for service did not constitute good cause for failure to serve).

The "good cause standard is at least as stringent as the 'excusable neglect' standard under Rule 6(b)." *Momah*, 158 F.R.D. at 69. "Accordingly, the party seeking to show excusable neglect must demonstrate that it made a good faith effort to comply with the rule as well as provide some reasonable justification for its noncompliance." *Id.* Factors that may be examined in this analysis include:

1. whether the neglect results from professional incompetence;

2. whether the excuse offered is of the type easily manufactured and not verifiable by the court;

3. whether the tardiness results from an attorney's failure to provide for a readily foreseeable consequence;

4. whether the neglect results from a complete lack of diligence; or

5. whether counsel made substantial good faith efforts toward compliance.

*Id.*

B. **AEROGLOBAL DELIBERATELY DELAYED SERVICE, THEN MADE ONE LAST-MINUTE, HALF-HEARTED ATTEMPT.**

AeroGlobal has adopted a strategy of filing duplicative lawsuits in various fora, but apparently does not want to prosecute its redundant suit. As part of this strategy, AeroGlobal chose to forego service of its federal complaint on defendants, and did so only when Mr. Millard "spilled the beans" during his deposition. Good cause does not exist when a plaintiff delays

service as a strategic decision. *See, e.g.*, *Sprader v. Goodson*, 2001 WL 506528 (S.D. Ohio Apr. 17, 2001). In *Sprader*, plaintiff used much of the service-period provided by Rule 4 in order to conduct settlement discussions, and used the possibility of service of the complaint as a bargaining ploy. The court disagreed that settlement discussions should suspend the time for service, concluding:

> Kendall deliberately withheld service in order to use the threat thereof as a bargaining ploy. Failure to observe Rule 4(m) cannot be forgiven where plaintiff strategically flaunts the Rule's obligations, and then, having failed tactically, requests the court to relieve him from the consequences of his own strategic failure.

*Id.* at *6.

After AeroGlobal unreasonably sat on its hands for three-and-a-half months, it made a single, feeble effort to serve Ms. Griffith via the U.S. Mail. AeroGlobal never attempted to effect personal service. It never attempted to timely serve her at her office. It never attempted to negotiate with Ms. Griffith's counsel to see if she would waive service. Instead, days before the summons would expire, counsel for AeroGlobal sent a registered letter to Ms. Griffith, who was not home. *See* Griffith Aff. at ¶ 7.

AeroGlobal tries desperately to excuse its negligence by claiming, incorrectly and without support, that Ms. Griffith was "attempting to evade service." Pl.'s Br. at 3. This is not true. *See* Griffith Aff. ¶ 6. By its nature, AeroGlobal's excuse is "of the type easily manufactured and not verifiable by the court." *Momah*, 158 F.R.D. at 69. Ms. Griffith is an investment banker; it should have been entirely foreseeable to AeroGlobal that a working professional such as Ms. Griffith would not be at home during business hours on a weekday. AeroGlobal's failure to anticipate this and effect service in a timely fashion is inexcusable.

Ms. Griffith was not timely served. AeroGlobal's failure to timely serve her was based on its own decision to hide the existence of this federal lawsuit, and its intentional delay until a

6

few days before the 120-day period for service expired. This neglect is not excusable. AeroGlobal has failed to provide good cause to override Rule 4(m)'s 120-day service period.

Nor has AeroGlobal provided any rationale justifying this Court's grant of discretionary relief. AeroGlobal chose a reckless path of ignoring the suit it filed in July, until circumstances forced it to acknowledge the suit. Rather than accepting the consequences of its failed strategy, AeroGlobal chooses to level incorrect accusations against a defendant whom it failed to serve. "[A] court should rule in favor of a noncomplying plaintiff only where some extenuating circumstance presents itself and compels the court, in the interests of justice, to allow the plaintiff's claim to go forward, even in the absence of good cause." *Momah*, 158 F.R.D. at 69. No such extenuating circumstance presents itself in this case; AeroGlobal simply failed to take adequate steps to achieve service in a timely manner.

## IV.  CONCLUSION

AeroGlobal's demand for another 45 days in which to serve Ms. Griffith should be denied.

Respectfully submitted,

_____
Francis P. Newell
Peter S. Breslauer
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA  19109
Ph: (215) 772-1500
Fx: (215) 772-7620

Counsel for Defendants

878223v1

Of Counsel:

Peter W. Carter
Christopher T. Shaheen
Andre T.M. Hanson
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN  55402-1498
Ph:  (612) 340-2600
Fx:  (612) 340-2868
Counsel for Defendants Cirrus Industries, Inc.,
Alan Klapmeier, Dale Klapmeier, Peter McDermott, II, and Sima Griffith


Michael R. Smith
Michael Sexton
King & Spalding
191 Peachtree Street
Atlanta, GA  30303
Ph:  (404) 572-4600
Fx:  (404) 572-5100
Counsel for Defendants Cirrus Holding Company, Ltd., Crescent Capital
 Investments, Inc., First Islamic Investment Bank, E.C., and John N. Dyslin


J. Forrest Hinton
Berkowitz, Lefkowitz, Isom & Kushner
South Trust Tower, Suite 1600
420 North Twentieth Street
Birmingham, AL  35203
Ph:  (205) 328-0480
Fx:  (205) 322-8007
Counsel for Defendants Marwan Atalla, William J. Midon and William C. Wood, Jr.

8

878223v1