1

```
 1              IN THE SUPERIOR COURT FOR

 2             NEW CASTLE COUNTY, DELAWARE

 3                     * * *

 4   AEROGLOBAL CAPITAL MANAGEMENT, LLC, : C.A. NO.
     a Delaware Limited Liability Company:
 5                                        :
                vs.                       :
 6                                        :
     CIRRUS INDUSTRIES, INC., a Delaware  :
 7   Corporation, CIRRUS HOLDING COMPANY  :
     LIMITED, a Cayman Islands            :
 8   Corporation, CRESCENT CAPITAL        :
     INVESTMENTS, INC., a Delaware        :
 9   Corporation, SIMA GRIFFITH,          :
     MARWAN ATALLA, WILLIAM J. MIDON      : 01-C-08-089
10   and WILLIAM C. WOOD                  : (CHT)

11                     * * *

12              FEBRUARY 21, 2002

13                     * * *

14         Oral deposition of KEITH FITZGERALD,

15   taken pursuant to notice, was held at the law

16   offices of SPECTOR GADON & ROSEN, P.C., 1635 Market

17   Street, 7th Floor, Philadelphia, Pennsylvania 19103,

18   beginning at 11:00 a.m., before McKinley Wise, a

19   Registered Professional Reporter and an approved

20   Reporter of the United States District Court.

21                     * * *

22           ESQUIRE DEPOSITION SERVICES
             1880 John F. Kennedy Boulevard
23                   15th Floor
             Philadelphia, Pennsylvania 19103
24               (215)  988-9191
```

ESQUIRE DEPOSITION SERVICES

1

```
 1                   - ROUGH DRAFT ONLY -

 2

 3              Witness' name

 4                  the deponent herein, having first been

 5                  duly sworn on oath, was examined and

 6                  testified as follows:

 7                        EXAMINATION

 8     BY MR. SENN:

 9        Q     Good morning, Mr. Fitzgerald.

10        A     Good morning.

11        Q     My name is Larry Senn and along with

12     Mr. Sexton here, I represent the plaintiff in this

13     action, Crescent Capital.

14              Have you given a deposition before, sir?

15        A     No.

16        Q     Have you testified in any proceeding in any

17     trial or other fashion?

18        A     No.

19        Q     Would you state your full name?

20        A     Keith Cameron Fitzgerald.

21        Q     Where do you reside, Mr. Fitzgerald?

22        A     St. Paul, Minnesota.

23        Q     What's your residence address?

24        A     829 and a half Lincoln Avenue, St. Paul,
```

- ROUGH DRAFT ONLY -                3

```
1     A    CIRRUS.  Prior to Cirrus, Carribean Island
2  air in San Juan, Puerto Rico.  Prior to them, Moravan
3  in Otrokovice in the Czech Republic, and let in -- also
4  in Otrokovice.  You want the spelling?
5     Q    Yeah, please.
6     A    OTROKOVICE.
7     Q    And this was also in Czechoslovakia?
8     A    Yes, Czech Republic.
9     Q    Czech Republic, okay.  Any other clients?
10    A    No.
11    Q    Do you operate under your own name or does
12 your business have a name?
13    A    Business name is boundary waters holdings,
14 Inc.
15    Q    And when did you establish boundary waters
16 holding, Inc.?
17    A    About two years ago, I think.
18    Q    Be in 1999?
19    A    I think so.
20    Q    That's a corporation?
21    A    Yes.
22    Q    In what state is it incorporated?
23    A    Georgia.
24    Q    Who are the shareholders?
```

KEITH FITZGERALD - 2/21/02                14

1          Q.      Have you invested any funds to be a

2     partner in AeroGlobal?

3          A.      No.

4          Q.      You say according to all the

5     documents, you are a partner.  Is there some

6     disconnect between what the documents say and I

7     guess what you believe is to be true?

8          A.      No.  I think I believe myself to be

9     a partner in it.

10         Q.      What do you understand the business

11    of AeroGlobal to be today?

12         A.      Well, I think the business is this

13    lawsuit.

14         Q.      What do you think about this

15    lawsuit?

16              MR. RUSSELL:  Object to the form.

17              Don't provide any privileged

18         information in giving an answer about

19         anything counsel has told you or that you

20         have told counsel.

21              MR. CARTER:  No.  I object to that.

22              If you have told counsel facts, you

23         can tell me those facts.  If you have told

24         counsel confidential information in

ESQUIRE DEPOSITION SERVICES

- ROUGH DRAFT ONLY -                52

1     in the other direction of where I was trying to go, so
2     I wasn't terribly excited about that but I did it for
3     Arthur.
4         Q     And so you met with Mr. Millard in Florida?
5         A     Yes.
6         Q     At his home in Palm Beach?
7         A     No, at the airport.
8         Q     The airport?  West Palm Beach airport?
9         A     No, Lantana airport.  I think, whatever one
10    is just one south of international.
11        Q     Okay.  Did you meet in the waiting room area
12    or did you have a conference room or --
13        A     No, no, we -- it's a little airport, just
14    outside.
15        Q     What was the substance of your conversation
16    with Mr. Millard?
17                   MR. WAGNER:  Objection to the form.
18    BY MR. SENN:
19        Q     Do you recall exactly what you said to him
20    and what he said to you?
21        A     No.
22        Q     Could you tell me the substance of the
23    conversation?
24        A     Yes.  He said I was inappropriately

- ROUGH DRAFT ONLY -          143

1   stock purchase agreement, what involvement, if any, did

2   you have with Mr. Millard, Moe and Isham in preparing

3   an additional proposal with them?

4        A.   I was present for a meeting with Mr. Isham,

5   Mr. Moe, Mr. Millard,al an and Dale Klapmeir and Jeff

6   Hesson after they signed the purchase agreement.

7        Q.   Just to save a little time, is it correct,

8   sir, that this was on June 7th and you went to the

9   airport light at night to pick them up and brought them

10  back to Mr. Millard's home in Newport, Rhode Island?

11       A.   Yes.

12            MS. GIBBS:  Just going to object to the

13  form of that question

14  BY MR. SENN:

15       Q.   I understand that there was no business

16  talked that evening, but got up the next morning and

17  had a meeting throughout the day.

18       A.

19       Q.   All right.  Tell me in general what the

20  discussions were on the -- on June 8th among the

21  individuals you just identified.

22       A.   Well, Alan and --

23            MS. GIBBS:  Objection to the form.  You

24  identified the individuals, not he, but -- I believe in

KEITH FITZGERALD - 2/21/02          144

1              (Pause.)

2        A.      I don't remember whether I have seen

3    this or not.  It's quite likely this was faxed to

4    me, but I don't have a recollection of reading it.

5    I moved while a lot of this was going on.  I was

6    in the process of a move from Minnesota to New

7    Hampshire.

8        Q.      When did you move from Minnesota to

9    New Hampshire?

10       A.      Well, I left Minnesota in June and I

11   didn't move into New Hampshire until October.  So

12   I was without a fax for that period.

13       Q.      During the period of time between

14   June and October, Mr. Fitzgerald, where were you

15   living?

16       A.      I was living in my house that I own

17   with my three siblings in Connecticut, and

18   friends, different places, waiting for my closing.

19       Q.      Slow-moving truck?

20       A.      I don't even want to talk about the

21   move.

22       Q.      There is reference in the paragraph

23   that is identified as A to a closing date no

24   earlier than October 1, 2001.

ESQUIRE DEPOSITION SERVICES