## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

AEROGLOBAL CAPITAL MANAGEMENT, LLC., : 
a Delaware Limited Liability Company, : 
  : 
      **Plaintiff,** : 
  : 
  :   **C.A. NO. 02-CV-5311**
    **v.** : 
  : 
CIRRUS INDUSTRIES, INC., : 
a Delaware Corporation, CIRRUS HOLDING :   **JURY TRIAL DEMANDED**
COMPANY LIMITED, a Cayman Islands Corporation, : 
CRESCENT CAPITAL INVESTMENTS, INC., : 
a Delaware Corporation, FIRST ISLAMIC : 
INVESTMENT BANK, E.C., a Bahrain Investment : 
Bank, ALAN KLAPMEIER, DALE KLAPMEIER, : 
PETER P. McDERMOTT, II, JOHN N. DYSLIN, : 
SIMA GRIFFITH, MARWAN ATALLA, : 
WILLIAM J. MIDON, and WILLIAM C. WOOD, : 
  : 
      **Defendants.** : 
_____ : 

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FOR <u>IMPROPER VENUE OR, ALTERNATIVELY TO TRANSFER THIS ACTION</u>

Plaintiff AeroGlobal Capital Management, LLC ("AeroGlobal"), through its undersigned

counsel, submits this memorandum in opposition to the motion of Defendants Cirrus Industries,

Inc. ("Cirrus"), Cirrus Holding Company Limited ("CHCL"), Crescent Capital Investments, Inc.

("Crescent"), First Islamic Investment Bank, E.C. ("First Islamic"), Alan Klapmeier, Dale

Klapmeier, Peter McDermott, John Dyslin, William Wood, and Marwan Atalla to dismiss this

case for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), and the alternative motion

of those defendants and of remaining defendant William Midon to dismiss the case for improper

venue under Rule 10(b)(3)and/or to transfer the action to the District of Minnesota under 28

U.S.C. § 1404(a).[1]  Because this Court may exercise personal jurisdiction over all of the

defendants, and because venue in the Eastern District of Pennsylvania is proper, the motions to

dismiss should be denied.  Moreover, because the balance of relevant considerations weighs

substantially against transfer of this case, the motion to transfer should be denied as well.

<u>**BACKGROUND**</u>

Plaintiff AeroGlobal was formed in April, 2001 for the purpose  of acquiring a

substantial percentage of the shares of capital stock of defendant Cirrus, one of the world's

leading manufacturers of small, single-engine piston aircraft.  Complaint, ¶¶ 7-8 .  In June, 2001,

AeroGlobal and Cirrus entered into a contract under which Cirrus agreed to sell to AeroGlobal,

for a purchase price totaling $45,000,000, approximately 35% of Cirrus' common stock (the

"AeroGlobal Letter of Intent" or the "AeroGlobal LOI").  Complaint, ¶¶ 41-42.  Beginning on or

about June 18, 2001, in the reasonable belief that Cirrus would proceed in good faith to meet its

contractual obligations (including an explicit obligation to cease and desist from all negotiations

to sell capital stock to any persons other than AeroGlobal), AeroGlobal made its initial

investment of $12,000,000 under its contract with Cirrus.  Complaint, ¶ 47-48.  A substantial

portion of that initial investment -- $5,000,000 -- was earmarked by AeroGlobal and Cirrus to

pay a "break-up" or termination fee to defendant First Islamic and its agent and wholly owned

affiliate defendant CHCL, to enable Cirrus to terminate all dealings with First Islamic in

connection with an earlier arrangement whereby Cirrus was to sell 61% of its capital stock to

---

[1]       Also pending before the Court is AeroGlobal's motion to vacate the order of
February 28, 2003 dismissing this case due to AeroGlobal's failure to respond to the defendants'
motion to dismiss, and to extend the time for AeroGlobal to respond to the motion to March 21,
2003, the date on which this response is filed.

First Islamic for $77,500,000.  Complaint, ¶¶ 34, 36, 42.  Defendant Crescent and its director,

defendant Dyslin, at all times acted as the agents of First Islamic and, subject to First Islamic's

blessing, controlled the actions and negotiations of CHCL in connection with the transaction.

Complaint, ¶¶ 9-12.

Cirrus accepted AeroGlobal's initial $12,000,000 payment, and from June 18 until July

30, 2001 represented to AeroGlobal that Cirrus had terminated all dealings with CHCL, and was

proceeding in good faith toward the implementation of all of the transactions contemplated by

the Cirrus-AeroGlobal contract.  Complaint, ¶¶ 47-48.   In reliance on Cirrus' repeated

proclamations of good faith, AeroGlobal invested substantial additional amounts, including

substantial legal fees and expenses, in proceeding toward implementation of the transactions

contemplated by the parties' contract.  See Complaint, ¶¶ 2, 63.  Also in reliance on Cirrus'

proclaimed good faith, AeroGlobal expended substantial amounts to assist Cirrus in resisting a

lawsuit initiated by Crescent/CHCL in the Delaware Chancery Court in an effort to have that

court enjoin performance of the Cirrus-AeroGlobal contract and resurrect the proposed Cirrus-

First Islamic stock acquisition (the "Chancery Court litigation"). Complaint, ¶¶ 2, 52.

AeroGlobal was prepared to fund the final $3,000,000 of the initial investment when CHCL's

lawsuit was filed but, in light of the lawsuit, Cirrus and AeroGlobal agreed to defer the

$3,000,000 payment.  Complaint, ¶¶ 51-54.

Unbeknownst to AeroGlobal, and in direct contravention of Cirrus' representations and

proclamations of good faith, Cirrus -- and in particular its senior executives and directors Alan

and Dale Klapmeier -- never intended to honor its contract with AeroGlobal.  Instead, Cirrus and

its controlling officers used the AeroGlobal securities contract and the prospect of the

AeroGlobal transaction as a "stalking horse" and negotiating lever to extract more money from First Islamic in exchange for First Islamic's purchase of a majority of the Cirrus' capital stock, and to obtain extraordinary personal financial benefits for Alan and Dale Klapmeier.  Complaint, ¶¶ 3, 82.

On July 19, 2001, the Court in which Crescent/CHCL had filed its lawsuit ruled that CHCL was not entitled to a preliminary injunction to stop AeroGlobal and Cirrus from implementing the stock acquisition contemplated by their contract.  Complaint ¶ 60.   At that time, and for a period thereafter, Cirrus reaffirmed its representations to AeroGlobal that Cirrus would proceed in good faith to implement the AeroGlobal-Cirrus contract.  Complaint, ¶ 63.

Despite (a) explicit provisions in the AeroGlobal-Cirrus contract prohibiting Cirrus and First Islamic from continuing after June 17, 2001 to discuss or negotiate an acquisition of Cirrus' capital stock by First Islamic, (b) Cirrus' acceptance of AeroGlobal's initial $12,000,000 investment, (c) Cirrus' repeated representations and assurances that it was proceeding in good faith to implement all of the transactions contemplated by the AeroGlobal-Cirrus contract, and (d) Cirrus' representations and assurances that it would use a portion of AeroGlobal's money to pay First Islamic the $5,000,000 "break-up" fee and thereby terminate all further dealings with First Islamic, Cirrus, beginning sometime prior to July 12, 2001, entered into a course of secret negotiations with First Islamic with a view to selling First Islamic a controlling interest in Cirrus, enriching the Klapmeiers, and abandoning the AeroGlobal-Cirrus contract.  Complaint, ¶¶ 55, 56, 68, 82. These negotiations were concealed from AeroGlobal, and culminated in a secret vote by Cirrus' board of directors on or about July 30, 2001 to abandon further dealings with AeroGlobal and to walk away from the AeroGlobal-Cirrus contract.  Complaint, ¶¶ 55, 56,

75.  Even <u>after</u> the secret vote to abandon the AeroGlobal contract, Cirrus kept up the facade of preparing to implement the contract with AeroGlobal, in a final effort to wring the last $3,000,000 installment of bridge-loan funds from AeroGlobal, and to forestall any claim for repayment of the first $12,000,000 installment and of other amounts.  Complaint, ¶¶ 5, 76. Many of the facts and circumstances concerning this scheme came to light only after, and as a result of, litigation brought by AeroGlobal against several of the defendants herein in a state court in Delaware for breach of the letter of intent, tortious interference with the letter of intent, bad faith, and civil conspiracy.  Complaint, ¶ 5.  That state court litigation remains pending.

Throughout the period between the signing of the AeroGlobal-Cirrus Letter of Intent and the termination of that Letter of Intent, Cirrus was directing its representatives to continue to deal with AeroGlobal's Pennsylvania representatives as if the stock purchase transaction envisioned in the Letter of Intent was actually going to proceed.  <u>See</u> Complaint, ¶ 63; <u>see</u> <u>also</u>, Deposition of Stanley Jaskiewicz, February 10, 2003 ("Jaskiewicz Dep."), at 113-15.[2]  Cirrus representatives were in almost daily contact with AeroGlobal's Pennsylvania representatives regarding the terms of the definitive agreements called for under the Letter of Intent, AeroGlobal's due diligence review, and other time-consuming tasks, the completion of which would have enabled AeroGlobal and Cirrus to consummate the stock purchase.  Complaint, ¶ 63; Jaskiewicz Dep. at 113-15.  Indeed, many of the misrepresentations made to AeroGlobal, both

---

[2]      A true and correct copy of the deposition of Mr. Jaskiewicz, who was AeroGlobal's primary transactional attorney and who was AeroGlobal's primary Pennsylvania representative, is attached hereto as Exhibit "A."  The deposition, in its entirety, reflects that Cirrus was, through its conduct, misrepresenting its intent to move forward with the transactions contemplated by the AeroGlobal LOI, and explains the extent of the contact between Cirrus and its Pennsylvania representatives.

tacit and explicit, were directed by Cirrus toward AeroGlobal's Pennsylvania representatives, intending to cause AeroGlobal to rely on the misrepresentations to its detriment and to believe that Cirrus actually intended to move forward with the transactions contemplated by the AeroGlobal LOI.  Complaint, ¶ 21; See Jaskiewicz Dep.

Moreover, First Islamic, through CHCL and its representatives, prosecuted the Chancery Court litigation, at least in part, in Pennsylvania.  The filing of the Chancery Court lawsuit by CHCL was directed by First Islamic, and the prosecution of the lawsuit was part of First Islamic's scheme to interfere with the AeroGlobal-Cirrus Letter of Intent.  Complaint, ¶¶ 49, 107-08.  During the course of the discovery in that case, First Islamic conducted two depositions of AeroGlobal representatives in Philadelphia, Philadelphia,[3] and thus entered into Pennsylvania twice for the purpose of furthering the interference with the AeroGlobal LOI.

AeroGlobal commenced this action on July 24, 2002, against Cirrus and its controlling officers, Alan Klapmeier, Dale Klapmeier and Peter McDermott, for money damages for the losses suffered as a result of Cirrus' fraud in executing the AeroGlobal LOI with the intent not to proceed with the transactions contemplated therein (Counts I and II), and against Cirrus for breach of that contract, including losses suffered as a result of Cirrus' breach of the covenant of good faith and fair dealing implied in that contract (Counts III and IV).  AeroGlobal also brings the action against First Islamic, CHCL and their affiliate Crescent Capital Investments, Inc., as well as other individual defendants -- Midon, Atalla, Wood and Dyslin -- for money damages for the losses suffered as a result of those defendants' tortious interference with the AeroGlobal-

---

[3]    It is undisputed in this case that AeroGlobal principals Keith Fitzgerald and Craig Millard were conducted by CHCL and Cirrus in Philadelphia, Pennsylvania.

Cirrus contract, and their conspiracy to injure AeroGlobal and deprive it of its rights and money (Counts V and VI).

All defendants except Midon have moved to dismiss the case for lack of personal jurisdiction, arguing that the defendants, save Midon, lack the necessary contacts with Pennsylvania to subject them to personal jurisdiction in the Eastern District of Pennsylvania.  All defendants, including Midon, have also moved to dismiss the case for improper venue or, in the alternative, to transfer this action under 28 U.S.C. § 1404(a) to the District of Minnesota. AeroGlobal's response now follows.

## ARGUMENT

I.    **This Court Has Personal Jurisdiction over Defendants Cirrus, Alan Klapmeier, Dale Klapmeier and Peter McDermott Pursuant to the Securities and Exchange Act of 1934, and this Court has Pendent Personal Jurisdiction over all other Defendants.**

AeroGlobal has asserted a claim for securities fraud under the Securities Exchange Act of 1934 (the "1934 Act") against defendants Cirrus and its officers at the time, defendants Alan and Dale Klapmeier and McDermott.  The 1934 Act gives the federal district courts jurisdiction to enforce "any liability or duty" created by the that statute, and provides for nationwide service of process. 15 U.S.C. §§ 78aa ; see, e.g., City of Harrisburg v. Bradford Trust Co., 621 F.Supp. 463, 467 (M.D.Pa.1985). " '[W]hen a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States,' " rather than with any particular state. Sovereign Bank, F.S.B. v. Rochester Community Savings Bank, 907 F.Supp. 123, 125 (E.D.Pa.1995), quoting Busch v. Buchman, Buchman & O'Brien, 11 F.3d 1255, 1258 (5th Cir.1994)  There can be absolutely no doubt that Cirrus, a

-7-

resident of Delaware and Minnesota, and its former officers Klapmeier and McDermott, all
residents of Minnesota, have minimum contacts with the United States.  Thus, this Court has
personal jurisdiction over them pursuant to the Securities Exchange Act of 1934.  <u>See</u> <u>Securities
Exchange Commission v. Infinity Group Co.</u>, 27 F.Supp.2d 559, 563 (E.D. Pa. 1998) (asserting
personal jurisdiction in the Eastern District of Pennsylvania over a Virginia resident pursuant to
the nationwide service of process provisions of the Securities Exchange Act of 1934).

       With personal jurisdiction established as to Cirrus, Alan and Dale Klapmeier and
McDermott on the securities fraud claim, this Court may likewise assert personal jurisdiction
over all other defendants and all other claims.  The Third Circuit has adopted a federal common
law doctrine under which, where a defendant is properly before the court pursuant to the
extraterritorial service provision of a federal statute, the court may, in its discretion, exercise
personal jurisdiction over the other defendants in connection with pendent state claims.  <u>See</u>
<u>Robinson v. Penn Cent. Co.</u>, 484 F.2d 553 (3d Cir. 1973).   Some courts have labeled this
doctrine "pendent personal jurisdiction."  <u>See</u> <u>IUE AFL-CIO Pension Fund v. Hermann</u>, 9 F.3d
1049, 1057 (2d Cir. 1993).  As the Second Circuit stated in <u>Hermann</u>, "under the doctrine of
pendent personal jurisdiction, where a federal statute authorizes nationwide service of process,
and the federal and state claims  derive from a common nucleus of operative fact,' <u>the district
court may assert personal jurisdiction over the parties to the related state law claims even if
personal jurisdiction is not otherwise available.</u>"  <u>Id.</u> at 1056 (citations omitted).  <u>See</u> <u>also</u> 4B
Wright & Miller § 1125, at 256-57 (discussing <u>Hermann</u> and noting that it states the majority
rule regarding pendent personal jurisdiction and that no court has rejected it).  In essence, once a
district court has personal jurisdiction over a defendant for one claim, it may "piggyback" onto

that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arose from the same facts as the claim over which it has proper personal jurisdiction, and thus are considered part of the same "case or controversy."  See Hermann, 9 F.3d at 1056-57.

All of the pendent state claims asserted against all of the defendants plainly arise out of a common nucleus of operative fact, as all of the claims asserted by AeroGlobal arise from the execution, performance and breach of the AeroGlobal LOI and from the interference with that contract by the defendants. Accordingly, and by virtue of the 1934 Act jurisdiction that exists over defendants Cirrus, the Klapmeiers and McDermott, this Court has pendent personal jurisdiction over defendants First Islamic, CHCL, Crescent, Dyslin, Wood and Atalla.  See Hermann, 9 F.3d at 1056-57.

**II.     This Court Has Personal Jurisdiction Over First Islamic, CHCL, and Crescent Because of the Acts of CHCL's and Crescent's Representatives in Pennsylvania To Further the Interference with the Cirrus-AeroGlobal LOI and Because CHCL and Crescent are Agents of First Islamic.**

First Islamic, CHCL and Crescent are also subject to personal jurisdiction pursuant to Pennsylvania's long-arm statute.  Once a defendant objects to a Court's jurisdiction over its person, the plaintiff must demonstrate that there is both a statutory and constitutional basis for the Court's exercise of jurisdiction.  See McCall v. Formu-3 Internat'l, Inc., 437 Pa. Super. 575, 577-79, 650 A.2d 903, 904 (1994).  Pennsylvania's "long-arm" statute, 42 Pa.C.S. § 5322, allows a court to exercise personal jurisdiction when a party has "directly or by an agent" caused harm or tortious injury by an act or omission in this Commonwealth, and the reach of the long-arm statute is limited only by the United States Constitution.  See 42 Pa.C.S. § 5322(a)(3) & (b).

Thus Pennsylvania courts may "exercise jurisdiction over nonresident defendants to the fullest

extent allowed under the Constitution of the United States and jurisdiction may be based on the

*most minimum* contacts with this Commonwealth allowed under the Constitution of the United

States." C.J. Betters v. Mid South Aviation, 407 Pa. Super, 511, 595 A.2d 1264, 1266 (1991)

(emphasis added; internal quotation marks omitted).

It is well settled that a Pennsylvania court may assert personal jurisdiction over a

non-resident defendant if this exercise does not compromise the non-resident's rights under the

due process clause of the Fourteenth Amendment.  See, e.g., Vetrotex Certainteed Corp. v.

Consolidated Fiber Glass Prod. Co., 75 F.3d 147, 150 (3d Cir. 1996); Burger King Corp. v.

Rudzewicz, 471 U.S. 462, 474-75 (1985). To comport with due process, the court must be

satisfied that the defendants (1) have minimum contacts with the forum state, (2) have purposely

directed their activities to residents of the forum, and (3) should reasonably expect to be haled

into court in this forum as a result of their actions. Burger King, 471 U.S. at 474-75; see also

International Shoe Co. v. Washington, 326 U.S. 310, 318-320 (1945); World-Wide Volkswagen

Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Pennsylvania law divides jurisdiction into two categories -- general jurisdiction and

specific jurisdiction. "General jurisdiction exists when a non-resident defendant is deemed

' present' in the state by virtue of its actions" within the state. Brooks v. Bacardi Rum Corp., 943

F. Supp. 559, 561 (E.D. Pa. 1996); see 42 Pa. C.S. § 5301. This requires that the defendant have

maintained "continuous and systematic" contact with the Commonwealth. Helicopteros

Nacionales de Colombia v. Hall, 466 U.S. 408, 416 (1984) (citing International Shoe, 326 U.S.

at 320).  AeroGlobal does not contend that any defendant other than Midon is subject to general

-10-

jurisdiction in Pennsylvania.

Specific jurisdiction exists when the claim arises from or is related to constitutionally adequate contacts that the defendant has with the forum. See Helicopteros, 466 U.S. at 414 n.8 (1984); Vetrotex, 75 F.3d at 151 & n.3; Gehling v. St. George's School of Med., 773 F.2d 539, 540-41 (3d Cir. 1985); 42 Pa. C.S. § 5322. As the Third Circuit stated in Vetrotex, in order to establish specific jurisdiction, the defendant must first have the constitutionally required "minimum contacts" with the forum. See Burger King, 471 U.S. at 474. Second, if minimum contacts are shown, jurisdiction may be exercised where the court, in its discretion, determines that to do so would comport with "traditional notions of fair play and substantial justice." International Shoe, 326 U.S. at 316.

In order to exercise specific jurisdiction, there must be "some act by which the defendants purposely availed [themselves] of the privilege of conducting business in the forum state, thus invoking the benefits and protections of the laws." Mellon Bank (East) PSFS, N.A. v. Kenneth, 960 F.2d 1217, 1221 (3d Cir. 1992) (citing Hanson v. Denckla, 357 U.S. 235, 253 (1958)). Pennsylvania's long-arm statute enumerates several bases for exercising specific jurisdiction over persons outside the Commonwealth. Thus, 42 Pa. C.S. § 5322(a)(4) lists "causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth" as one ground on which the exercise of jurisdiction is justified.

Due process does not require a defendant's physical presence in the forum before personal jurisdiction may be exercised. See Quill Corp. v. North Dakota, 504 U.S. 298, 307-08 (1992); North Penn Gas v. Corning Natural Gas Corp., 897 F.2d 687, 691 (3d. Cir. 1990). Instead, a single contact with the forum state by the out-of-state defendant may be sufficient to

subject that defendant to personal jurisdiction, particularly if the "contacts evaluated are those that give rise to the litigation." Grand Entertainment Group v. Star Media Sales, Inc., 988 F.2d 476, 483 (3d Cir. 1993); see also Burger King, 471 U.S. at 475 n.18; Taylor v. Phelan, 912 F.2d 429, 433 n.4 (10th Cir.1990) ("So long as it creates a substantial connection, even a single telephone call into the forum state can support jurisdiction"), cert. denied, 498 U.S. 1068 (1991); Zeneca Ltd. v. Mylan Pharm., Inc., 968 F. Supp. 268, 274 (W.D. Pa. 1997) ("even a single contact may be sufficient to create jurisdiction, provided that the principle of 'fair play and substantial justice' is observed").

As mentioned above, Crescent/CHCL's filing and prosecution of the Chancery Court lawsuit, which was done at the explicit blessing of First Islamic, constituted a significant part of the interference with the AeroGlobal LOI. During the course of the Chancery Court lawsuit, CHCL and Crescent, acting through its representatives, twice entered into Pennsylvania to further its prosecution of that lawsuit and the interference with the AeroGlobal LOI. See Exhibit B. These are not "random, fortuitous or attenuated contacts" with the forum state, World Wide Volkswagen, 444 U.S. at 299, but instead are among the very contacts "that give rise to the litigation." See Grand Entertainment Group, 988 F.2d at 483. Thus, CHCL and Crescent have sufficient minimum contacts with Pennsylvania such that the assertion of personal jurisdiction over those defendants would not violate the principle of "fair play and substantial justice." See International Shoe, 326 U.S. at 316.

Additionally, the in-state contacts of Crescent/CHCL are imputed to First Islamic since Crescent/CHCL act only as the agents or "arms" of First Islamic. As Pennsylvania's long-arm statute itself plainly provides, the forum related activities of an agent are to be imputed to a

principal in order to confer personal jurisdiction over the principal.  See 42 Pa.C.S. § 5322(a).

To exercise personal jurisdiction under the agency theory, "a close connection [should exist]

between the relationship of the two corporations and the cause of action," with the scope of the

jurisdiction limited by the scope of the authority delegated to the agent. Sears, Roebuck & Co. v.

Sears plc, 744 F. Supp. 1297, 1305 (D. Del. 1990).

    The relationships between Crescent/CHCL and First Islamic clearly warrant a finding

that Crescent and CHCL are agents for First Islamic.  Crescent is the U.S. investment arm of

First Islamic.  See Exhibit "C."  Mr. Crosland, the president and executive director of Crescent,

Charles Ogburn, an executive director of Crescent, and John Dyslin, a director of Crescent, all

agree that Crescent is an agent for First Islamic in First Islamic's pursuit of U.S. investments.

See Exhibits "D," "E," and "F," respectively.  When First Islamic attempted to sweeten its

original offer, Crescent made the proposal "on behalf of First Islamic."  See Exhibit "G"  at 1.

Specifically, to gain the requisite authority to improve its earlier offer, Crescent had to seek

explicit permission from First Islamic.  See Exhibit "H." Indeed, any authority that Crescent has

derives from that granted to it by First Islamic.  See Exhibit "I."   Similarly, CHCL is also an

agent of First Islamic.  CHCL was organized by First Islamic for the sole purpose of purchasing

Cirrus.  Complaint, ¶ 10.  Although CHCL was to receive the termination fee pursuant to the

first Stock Purchase Agreement, First Islamic instead requested that the funds be wired directly

to its account.  See Exhibit "J" at 65 67; Exhibit "K."  In addition, First Islamic announced via

press releases that it had purchased Cirrus. See Exhibit "L."  Finally, while CHCL was the

putative purchaser of Cirrus, any decision regarding the investment had to be approved by First

Islamic rather than CHCL.  See Exhibits H and I. Thus, by any definition, Crescent and CHCL

-13-

are agents of First Islamic, and their forum contacts are to be imputed to First Islamic.  And,
since Crescent/CHCL are subject to personal jurisdiction in Pennsylvania, First Islamic is
likewise subject to personal jurisdiction as the principal of Crescent/CHCL.  See 42 Pa.C.S. §
5322(a).

**III.**   **This Court Has Personal Jurisdiction over Defendants Dyslin, Wood and Atalla**
**Due**   **to Their Participation in the Conspiracy to Interfere with AeroGlobal's LOI with**
        **Cirrus.**

        Defendants Dyslin, Wood and Atalla are additionally subject to personal jurisdiction by
virtue of the Pennsylvania-directed conduct of their other, co-conspirator defendants.  The
contacts and actions of First Islamic, CHCL, Crescent and Cirrus, all of whom conspired to
commit the harms that are alleged in the complaint, see Complaint, ¶¶ 80-82, 113-115, are
plainly sufficient to justify the Court's exercise of personal jurisdiction over them, and are
imputed to Dyslin, Wood and Atalla for jurisdictional purposes.[4]  Pennsylvania courts have
accepted the conspiracy principle of personal jurisdiction, "which is based on the time honored
notion that the acts of a conspirator in furtherance of a conspiracy may be attributed to the other
members of the conspiracy."   United States v. Arrow Medical Equipment Co., 1990 U.S. Dist.
LEXIS, 17223, *22 (E.D. Pa. 1990) (internal quotation marks omitted).

        Under the conspiracy principle, the "acts of a conspirator [taken] in furtherance of a
conspiracy may be attributed to the other members of the conspiracy" for jurisdictional purposes.
In re Arthur Treacher's Franchisee Litigation, 92 F.R.D. 398, 411 (E.D. Pa. 1981); see also

---

[4]        Were there not other bases of personal jurisdiction over defendants Alan
Klapmeier, Dale Klapmeier and Peter McDermott, they would likewise be subject to personal
jurisdiction in Pennsylvania due to their participation in the conspiracy to interfere with the
AeroGlobal LOI.

-14-

Temtex Products, Inc. v. Kramer, 330 Pa. Super. 183, 195, 479 A.2d 500, 506 (1984) (personal

jurisdiction over all of the participants in a concerted action may be maintained where a

substantial part of the action took place in the forum state). Thus Pennsylvania courts "have

asserted jurisdiction over a non-resident co-conspirator, over whom jurisdiction would otherwise

be lacking, provided another co-conspirator has the traditional contacts with the forum and is

subject to the Court's *in personam* jurisdiction." Arthur Treacher's, 92 F.R.D. at 411.  To impute

the contacts of a resident conspirator to a foreign co-conspirator, it is sufficient that the plaintiff

"allege that defendants entered into an actionable conspiracy and that a substantial act in

furtherance of that conspiracy was performed in the forum state." United States v. Arrow

Medical Equipment Co., 1990 U.S. Dist. LEXIS, 17223, *22 (E.D. Pa. 1990) (citing Textor v.

Board of Regents of Northern Illinois University, 711 F.2d 1387, 1392-93 (7th Cir. 1983)); cf.

Santana Products, Inc. v. Bobrick Washroom Equipment, 14 F. Supp. 2d 710, 720 (E.D. Pa.

1998) (finding no personal jurisdiction where plaintiff failed to show any act in Pennsylvania in

furtherance of the alleged conspiracy); Massachusetts School of Law at Andover, Inc. v.

American Bar Assoc., 846 F. Supp. 374, 380 (E.D. Pa. 1994) (same).

  In Temtex Products, 330 Pa. Super. at 183, 479 A.2d at 500, for example, the Superior

Court considered whether an out-of-state resident was subject to personal jurisdiction for claims

related to his alleged participation in a conspiracy to defraud the plaintiff.  The out-of-state

defendant argued that the court lacked personal jurisdiction over him because he lacked

sufficient minimum contacts with Pennsylvania.  The trial court disagreed.  The Superior Court

affirmed, holding that "personal jurisdiction over all of the participants in concerted action may

be maintained where a significant part of the action took place in the forum state."  Id., 330 Pa.

Super. at 195, 479 A.2d at 506.  Thus the out-of-state defendant's "participation in the alleged conspiracy ... renders him subject to the jurisdiction of the courts of this Commonwealth."  Id., 330 Pa. Super. at 200, 479 A.2d at 508.

Here, as set forth above, Cirrus directed a substantial portion of its misrepresentations and misinformation to AeroGlobal's Pennsylvania representatives, and Crescent/CHCL entered into Pennsylvania twice to further the interference with the AeroGlobal LOI.  The contacts of Cirrus and Crescent/CHCL with Pennsylvania are imputable to their co-conspirators, defendants Dyslin, Wood and Atalla, rendering those three individuals subject to personal jurisdiction in Pennsylvania.  See Temtex.

**IV.    Venue is Proper in the Eastern District of Pennsylvania, and the Court Should Deny    Defendants' Motion to Transfer Venue.**

Defendants also move to dismiss the action for improper venue, arguing that venue is not proper in this district because, they contend, nothing happened here.  As set forth above, however, substantial acts and omissions of Crescent/CHCL and Cirrus occurred in the Eastern District of Pennsylvania.  In a civil action in which jurisdiction is not founded solely on diversity of citizenship, such as this action, venue is proper in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.  28 U.S.C. § 1391(b)(2); see also United States v. Famous Artists Corp., 1996 WL 114932, at *7 (E.D. Pa., March 14, 1996). Because a substantial part of the events and omissions giving rise to the claim occurred in the Eastern District of Pennsylvania, venue is proper in this district.  See 28 U.S.C. § 1391(b)(2); Famous Artists Corp.

Defendants alternatively move to transfer this case to the District of Minnesota pursuant

to 28 U.S.C. § 1404(a), noting that Cirrus is located in that state and that much of Cirrus' conduct occurred there as well.  Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The decision to transfer under section 1404(a) lies within the discretion of the trial court. <u>Jumara v. State Farm Insur. Co.</u>, 55 F.3d 873, 879 (3d Cir.1995); <u>Shutte v. Armco Steel Corp.</u>, 431 F.2d 22, 25 (3d Cir.1970). This discretion, however, is to be exercised in light of the "black letter law that a plaintiff's choice of proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." <u>Shutte</u>, 431 F.2d at 25; <u>see</u> <u>also</u> <u>Elbeco Inc. v. Estrella de Plat Corp.</u>, 989 F.Supp. 669, 679 (E.D.Pa.1997) (same). The defendant bears the burden of proving that convenience and justice would be served by transferring the action to another district. <u>In re United States</u>, 273 F.3d 380, 388 (3d Cir.2001); <u>Shutte</u>, 431 F.2d at 25. Importantly, [t]he purpose of transfer is not to shift the inconvenience from one party to another." <u>Elbeco</u>, 989 F.Supp. at 679; <u>Superior Precast Ins. v. Safeco Insur. Co. of Amer.</u>, 71 F.Supp.2d 438, 446 (E.D.Pa.1999). "[U]nless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." <u>Shutte</u>, 431 F.2d at 25; <u>Superior Precast</u>, 71 F.Supp.2d at 446. Accordingly, where either forum would cause one of the parties some cost and inconvenience, and defendant's inconvenience at plaintiff's choice of forum does not greatly outweigh the inconvenience that plaintiff would suffer upon defendant's choice, transfer is improper. Such is the situation here, and the Court should refuse to simply shift the inconvenience and deny the defendants' motion.

     In order to assess the convenience and justice of litigation in particular forum, courts

consider numerous factors reflecting both private and public interests.  The relevant private

considerations include: (i) whether the claim arose elsewhere, (ii) the convenience of the parties

as indicated by their relative physical and financial condition, (iii) the convenience of the

witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of

the fora, and (iv) the location of books and records (similarly limited to the extent that the files

could not be produced in the alternative forum).  Jamara, 55 F.3d at 879.  The relevant public

considerations include public interests (i) the enforceability of the judgment, (ii) practical

considerations that could make the trial easy, expeditious, or inexpensive,(iii) the relative

administrative difficulty in the two fora resulting from court congestion, (iv) the local interest in

deciding local controversies at home, (v) the public policies of the fora, and (vi) the familiarity

of the trial judge with the applicable state law in diversity cases.  Id., 55 F.3d at 879-80.

The private interests here plainly weigh against transfer of this case.  This case arose, in

substantial part, by the misrepresentations of Cirrus directed toward AeroGlobal's Pennsylvania

representatives and by the prosecution of the Chancery Court lawsuit by First Islamic and its

agents in Pennsylvania.  With respect to the parties' respective financial condition, First Islamic

is a Bahrain-based investment bank with hundreds of millions of dollars, and Cirrus is an aircraft

manufacturer that has First Islamic's financial backing.  The individual defendants are all being

indemnified for their defense of this lawsuit and the Delaware litigation by Cirrus and/or First

Islamic.  AeroGlobal's membership, by contrast, consists only of three individuals, one of whom

has substantial financial resources, but nothing of the magnitude represented by First Islamic.

There is no indication that a witness would somehow be more available for trial in Minnesota

than in Pennsylvania and, because of the discovery that has already occurred in the Delaware

litigation, all of the parties already possess most of the relevant documents in this case. Accordingly, the balance of the private interests plainly lean in favor of AeroGlobal's choice of forum and, in any event, do not so greatly weigh in favor of Cirrus and the other defendants -- most of whom are not residents of Minnesota -- such that would warrant transfer of this action to Minnesota.

The public interests likewise weigh in favor of AeroGlobal's choice of forum.  There is no indication that a judgment had in Pennsylvania could not be enforced against the defendants in their respective states or jurisdictions of residence, and the defendants have identified no practical considerations regarding ease of trial or otherwise that would favor a transfer to Minnesota.  Although the defendants note that the Eastern District of Pennsylvania has a greater caseload than does the District of Minnesota, that factor alone does not tip the balance in favor of transfer, and there is no indication that the Eastern District of Pennsylvania is so congested that a timely trial on the merits could not occur within a reasonable period of time.  There is no discernable public policy consideration in this case, but Pennsylvania certainly has an interest in having this case decided here, since Cirrus especially directed many of its misrepresentations to AeroGlobal's Pennsylvania representatives.  Finally, judges in the Eastern District of Pennsylvania clearly are more familiar with Pennsylvania law than are judges in the District of Minnesota.

Accordingly, the balance of considerations weigh substantially against transferring this case to the District of Minnesota, and the court should deny defendants' motion under section 1404(a).

## **CONCLUSION**

-19-

This Court may exercise personal jurisdiction over all of the defendants under multiple theories of *in personam* jurisdiction, and venue in the Eastern District of Pennsylvania is proper. Finally, the balance of considerations weighs substantially against a transfer of this case under 28 U.S.C. § 1404(a).  Accordingly, this Court should deny the motion of defendants Cirrus, CHCL, Crescent, First Islamic, Dyslin, Alan Klapmeier, Dale Klapmeier, McDermott, Wood and Atalla to dismiss the action as against them for lack of personal jurisdiction, and the motion of those defendants and remaining defendant Midon to dismiss the case for improper venue or, alternatively, to transfer this action to the District of Minnesota.

Respectfully submitted,

SPECTOR GADON & ROSEN, P.C.

_____

Paul R. Rosen
Timothy C. Russell
Michael C. Wagner
1635 Market Street, 7th Floor
Philadelphia, PA  19103
(215) 241-8888
(215) 241-8844 (fax)

Attorneys for Plaintiff
AeroGlobal Capital Management, LLC.

Dated:  March 21, 2003

## <u>CERTIFICATE OF SERVICE</u>

I, Michael C. Wagner, hereby certify that I caused a true and correct of the foregoing

Memorandum to be served upon the following counsel for defendants, by hand delivery, on this

the 21st day of March, 2003, at the address indicated:


Francis P. Newell, Esquire
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109
(Counsel for all defendants)


_____
Michael C. Wagner

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

|  |  |
|---|---|
| **AEROGLOBAL CAPITAL MANAGEMENT, LLC.,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| | :  **C.A. NO. 02-CV-5311** |
| **v.** | : |
| | : |
| **CIRRUS INDUSTRIES, INC., et al.** | : |
| | : |
| **Defendants.** | : |
| _____ | : |

## ORDER

AND NOW, this _____ day of _____, 2003, upon consideration of the motion of defendants Cirrus Industries, Inc., Cirrus Holding Company Limited, Crescent Capital Investments, Inc., First Islamic Investment Bank, E.C., Alan Klapmeier, Dale Klapmeier, Peter McDermott, John Dyslin, William Wood, and Marwan Atalla to dismiss this case for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), and the alternative motion of those defendants and of remaining defendant William Midon to dismiss the case for improper venue under Rule 10(b)(3)and/or to transfer the action to the District of Minnesota under 28 U.S.C. § 1404(a), and the response of AeroGlobal thereto, it is hereby ORDERED that the motions are DENIED.


BY THE COURT:


_____

Kobe William H. Yohn, Jr., Judge

F:\27647\002\District Court Action\Pleadings\DismissRespRev'd.wpd